# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

December 3, 2015

<u>by ECF and Hand Delivery</u>
The Honorable Frederic Block
Senior United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:  <u>U.S.A. vs. Tanya Domenech</u>, 14-CR-13 (FB)

Your Honor:

     I write on behalf of my client, Tanya Domenech, who is presently scheduled to appear before You for sentencing on **December 8, 2015, at 3:30 p.m.**

     Ms. Domenech was arrested on January 2, 2015, at John F. Kennedy International Airport after she arrived on a flight on a flight flight from Jamaica with Cocaine hidden in her luggage and pled guilty Guilty to Count I of an Indictment charging her with Importation of Cocaine before Magistrate Judge Go on August 20, 2015. She has remained in custody at the Metropolitan Detention Center throughout and will have been there for over 11 months on the day of sentencing.

<u>The Pre-Sentence Report (PSR) and Advisory Sentencing Guideline Calculation</u>

     In the PSR, the advisory sentencing guideline range was calculated to be 24 to 30 months of incarceration with a recommendation by the Probation Department that she be sentenced below the guideline range to 16 months in consideration of her "serious mental health history."

     This calculation and recommendation was made before Ms. Domenech had not yet satisfied the criteria of Guidelines 2D1.1(b)(17) and 5C1.2, the so-called "Safety Valve" provisions. She has since, so that now her advisory guideline range is thereby reduced by 2-levels to 18 to 24 months.

Beyond this, we believe that there are sufficient reasons in "the nature and circumstances of the offense and the history and characteristics of the defendant," that would make a sentence for Ms. Domenech, even further below the calculated advisory sentencing guideline range, to "time served", both "reasonable" and consistent with the purposes of 18 U.S.C. §3553 (a). *See United States v. Booker*, 125 S. Ct. 738 (2005), *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005).

I. **18 U.S.C. 3553A Analysis**

   **A. Factors to consider in determining sentence.**

18 U.S.C. §3553(a) requires consideration of the statutory sentencing factors and a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in §3553(a)(2).

   **1. 18 U.S.C. §3553(a)(1). The nature and circumstances of the offense and the history and characteristics of the Defendant;**

As You know from the PSR, Ms. Domenech is a 30 year United States citizen born in Lawrence, Massachusetts and residing in Homestead, Florida with her mother and and the oldest (13) of her four children. It appears that fro the time her father went to prison for five years when Ms. Domenech was only 12, her life has been plagued by the trauma of physical and sexual abuse, and mental health problems exacerbated by substance abuse.

Beyond what is in the PSR, with respect to her background and problems, I am attaching, as **Exhibit A**, a letter from Danielle Azzarelli, a licensed social worker and a Mitigation Specialist with the Federal Defenders in the Eastern District, who has been working with Ms. Domenech, at my request, since the early stages of this case.

   **2. 18 U.S.C. §3553(a)(2). The need for the sentence imposed--**

   (A) *To Reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.* **18 U.S.C. 3553(a)(2)(A).**

The crime is, of course, serious and while there is certainly a need to promote respect for the law, Ms. Domenech clearly realizes it. This was the act of a woman driven by financial need whose judgement was skewed by mental health problems compounded by substance abuse. The resulting time in prison made all the more clear by properly proscribed medication has had the strongest possible impact on her.

   **(B) (C)** *To afford adequate deterrence to criminal conduct and to protect the public from further crimes of this defendant.* **18 U.S.C. §3553(a)(2)(B) and (C).**

This is the first time that Ms. Domenech has been in jail for any length of time and the

separation from her mother and children has made it all the more onerous. She has already been, in the proverbial sense taught a lesson that should result in her never acting so foolishly again. Being on Supervised Release afterwards should all but guarantee it.

> **(D)** *To provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner.* **18 U.S.C. §3553(a)(2)(D).**

It seems that Ms. Domenech has already received what the Bureau of Prisons is capable of providing . As Ms. Azzareli points out in the <u>Re-entry plan</u> portion of her letter, the components in place for her return to her community offer the most towards lasting success on the outside.

### 3. 18 U.S.C. §3553(a)(3).

The Court must also consider the kinds of sentences available. There is no mandatory minimum sentence for this offense, so all types sentences are available. The Court has significant power to order any rehabilitative conditions of supervision.

### 4. 18 U.S.C. §3553(a)(4).

The Court is, of course, required to consider the advisory Sentencing Guidelines but free to impose what is most reasonable..

### 5. 18 U.S.C. §3553(a)(5).

The Court must consider whether there are any pertinent policy statements issued by the sentencing commission that would affect the sentence. There are none.

### 6. 18 U.S.C. §3553(a)(6).

The Court must seek to avoid unwarranted sentencing disparity among defendants, while bearing in mind that the individualized application of the sentencing factors is the goal. *United States v. Dorvee*, 616 F.3d 174 (2nd Cir 2010).

### 7. 18 U.S.C. §3553(a)(7).

Finally, the Court must determine if there are any victims in the case requiring restitution. There are none.

## II. Conclusion.

With all of these facts and circumstances in mind, I, respectfully, urge Your Honor to heed the so-called "parsimony clause" of 3553(a) and be as lenient as possible in imposing , "a sentence sufficient, but not greater than necessary," to allow Ms. Domenech to move as positively forward with her life as she can. It is, respectfully, submitted that a sentence to the

time already served with appropriate conditions of supervised release would best accomplish this.

          Sincerely,

          *Michael P. Padden*

          Michael P. Padden, Esq.
          (718) 330-1240

enc.

cc:    AUSA Lindsay K. Gerdes

       USPO Michele Espinosa

       Tanya Domenech
       MDC Reg. #80965-053

# Exhibit A

# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

---

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

November 24, 2015

The Honorable Judge Frederick Block
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*United States vs. Tanya Domenech*
*Docket No. 15-CR-00013*

Dear Honorable Judge Block,

    I write this letter in anticipation of our client's sentencing in front of Your Honor. I am a Mitigation Specialist at the Federal Defenders of New York and a licensed social worker in the State of New York. Our client, Ms. Tanya Domenech, has been in custody at the Metropolitan Detention Center (MDC) since January 2, 2015 and is looking forward to transitioning back into the community with the lessons she has learned from her time inside.

History of trauma

    Ms. Domenech has a personal history marked by severe and persistent trauma. According to the Pre-Sentence Investigation Report submitted by the U.S. Probation Department, Ms. Domenech has been the victim of physical, emotional and sexual abuse throughout her life, starting from a very young age. When she was only 12 years old, her uncle repeatedly molested her and bribed her to keep quiet. During her adolescent years, when she was still just a child, she reports having been raped by several different acquaintances. Consistent with each of these violations is her family and friends' minimization and denial of the abuse. Her family's reaction to her uncle's abuse ultimately caused her to run away from home, and the sexual assaults by acquaintances were laughed off or ignored by her friends. During these developmental years she had a shattered sense of trust in people, especially those charged to keep her safe.

    As is common with women who have experienced abuse as a child, Ms. Domenech later became romantically involved with partners who perpetuated abuse.[1] Her ex-boyfriend, Mr. Jerry Jones, was particularly abusive towards Ms. Domenech to the point where such violence was normalized. The repeated and ongoing violations of her personal boundaries have eroded her sense

---

[1] Browne, A., Miller, B. & Maguin, E. (1999). Prevalence and severity of lifetime physical and sexual victimization among incarcerated women. *International Journal of Law and Psychiatry.* 22(3-4). 301-322.

of self-worth, autonomy and self-determination, which are components for a successful, productive life.

Women in the criminal justice system have higher rates of trauma than the general population. Trauma has been associated with criminal behavior through empirical studies that outline factors, such as child corruption, which position some people as more apt to commit crimes.[2] Ms. Domenech's present legal situation is likely to have been influenced by her history of trauma. She reports that her behavior was financially motivated, but if we analyze further we can see that at the time of the offense, Ms. Domenech did not have well-developed boundaries as a result of her trauma history and as such was persuaded by the men involved to make a bad choice.

Mental health and substance abuse issues

Ms. Domenech has a complex set of mental health and substance abuse issues which are inextricably linked to her history of trauma. She has been diagnosed with mental health disorders including bipolar disorder, schizoaffective disorder (a very serious illness which contains symptoms of both bipolar and schizophrenia), and borderline personality disorder. Ms. Domenech explains that she has used illegal substances to cope not only with the symptoms of her psychiatric conditions but also to self-medicate herself from traumatic experiences.

Given the compounded and acute conditions from which Ms. Domenech suffers, she requires more treatment than is currently provided in the custody of the Bureau of Prisons. According to Ms. Domenech's medical records obtained from the MDC, she has met with a psychiatrist only a handful of times and, before recently, only received mental health counseling on roughly a monthly basis. In my experience, I have seen clients with similar and less severe mental health issues who see therapists on a weekly basis in conjunction with monthly visits with a psychiatrist for medication management. Ms. Domenech's mental health treatment is woefully inadequate to address the underlying obstacles that have prevented her from living a law-abiding and successful life. It is her goal to resume mental health treatment in her community so that she can be prescribed the proper medication for her illness, learn positive coping skills and tips for symptom regulation that can stabilize her conditions moving forward.

Strengths

Ms. Domenech has relayed stories of her time in prison that convey positive aspects of her personality. She explained that since her psychotropic medications make her very drowsy, she often sleeps for many hours during the day, sometimes skipping meals in order to keep sleeping. However, some women in her unit have gently woken her up, given her a warm rag to sooth herself, and save her food so that she can eventually eat. Such gestures on the part of these women are very kind, however they also demonstrate that these women thought Ms. Domenech was worthy of such kindness. Indeed, Ms. Domenech explains how she cares for other women in her unit by demonstrating her loyalty, sharing her personal belongings, and participating in group activities.

The love Ms. Domenech holds for her children further demonstrates her capacity for empathy and responsibility. She repeatedly explains how she remains connected with her children,

---

[2] Moloney, K.P, van den Bergh, B.J., Moller, L.F. (2009). Women in prison: The central issues of gender characteristics and trauma history. *Public Health*. 123. 426-430.

and that she wishes she could provide more for them. In a conversation I had with her mother, Edita Domenech, she corroborates this notion that Ms. Domenech is a loving and caring mother.

Re-entry plan

Ms. Domenech has a few key components in place for her return to the community that will strengthen her chances for success. First, she has a stable and loving home where she can take the time to re-integrate into a life outside prison. Ms. Domenech will reside with her mother, Ms. Edita Domenech, who has remained supportive throughout her life and maintains as a positive motivator for change. Ms. Edita Domenech resides in low-income housing which she affords with her income from her job as a claims/processing representative. The long-term goal is that Ms. Tanya Domenech be able to afford her own apartment with income from employment or Social Security Disability, for which she has an active application pending.

Ms. Domenech actually has a hearing for her Social Security Disability (SSD) application on December 10, 2015. The grounds for her application are her mental illness, which has impeded her ability to secure continuing stable employment. Her application has been processing for the past three years and she was only recently granted this hearing. Ms. Domenech has been actively working on her application and is hoping that she can receive SSD benefits so that she can afford housing, health insurance and other necessities on her own.

In addition to stable housing, Ms. Domenech can utilize the mental health treatment system with which she already has experience and comfort. I have been in contact with New Horizons Community Mental Health Center, Inc., located in Miami, and established that Ms. Domenech can be assessed for outpatient mental health treatment when she has moved back to the area. She is directed to report to the organization, located at 1469 NW 36th Street, Miami, FL 33142, at 8:30am any day of the work week, from Monday through Friday, for an initial intake appointment. If found eligible for treatment, the agency will assist in reactivating her health insurance, which opens the possibilities for other forms of mental health treatment that can be utilized if more intensive, or different, treatment is needed.

Conclusion

We believe that Ms. Domenech is positioned to make healthy, long-lasting changes to her life when she is released from prison. It is our hope that Ms. Domenech be granted a sentence of time-served so that she can re-establish her mental health and substance abuse treatment in the community, work toward obtaining Social Security Disability benefits, and re-connect with her children, who have acutely felt her absence.

Respectfully submitted,

_____
Danielle Azzarelli, LMSW
Client and Mitigation Specialist
Federal Defenders of New York